# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CASE NO. 3:10-CV-00483-TBR

**MABEL SEBASTIAN**                                                                          **PLAINTIFF**

**v.**

**A TECHNICAL ADVANTAGE, INC.**
**d/b/a/ ATA COLLEGE**                                                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant A Technological Advantage, Inc.'s (mischaracterized in the pleadings as A Technical Advantage, Inc.) Motion for Summary Judgment (DN 13). Plaintiff Mabel Sebastian has filed a response (DN 14). Defendant has filed a reply (DN 15). This matter is now ripe for adjudication. For the reasons that follow, the Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff originally started working with Defendant as a career services advisor at a salary of $36,000. In September 2007, Plaintiff was promoted to Director of Career services and given a salary of $50,000. Sometime in 2008, she received a raise to $52,500. In 2009, Plaintiff maintained a base compensation of $52,500. However, Plaintiff also received a $15,000 bonus.[1] Accordingly, Plaintiff's 2009 compensation was at least $67,500.

In February of 2010, a Mr. Weber was assigned to Plaintiff's department. Mr. Weber was allegedly flagged for high-level management, and was therefore being rotated through

---

[1] Defendant also alleges that Plaintiff received in excess of $2,500 in profit-sharing in 2009. This number seems disputed and is irrelevant to the legal principles involved in the case.

various departments to learn the workings of Defendant. At some point in February, Plaintiff learned that Mr. Weber had a base salary of $55,000. In early March, Plaintiff obtained an attorney and asserted a claim of gender disrimination. Plaintiff took a medical leave for anxiety and stress on April 26, 2010 and resigned her position without ever returning from leave.

While Mr. Weber had a higher base salary than Plaintiff, it is alleged that Mr. Weber was ineligible to receive a bonus or profit sharing. Plaintiff has not contested this assertion.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of

2

material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to portions of this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

Plaintiff brought four claims. The first two are wage discrimination under both the Equal Pay Act and Kentucky Law. The next claim is one for retaliation under Kentucky law. The final claim is one for outrage under Kentucky law. Defendant has asked for summary judgment on all claims. Plaintiff has not contested Summary Judgment for the tort of outrage. Accordingly, Summary Judgment is GRANTED on claim IV.

**I. Equal Pay under Federal and Kentucky Statutes**

As an initial matter, the Kentucky Civil Rights Act is interpreted consistent with Title VII. *Woods v. Western Kentucky University*, 303 S.W.3d 484 (Ky. App. 2009). Accordingly, both claims can be resolved together.

For the purposes of summary judgment, Defendant has conceded many of the elements of wage discrimination. However, Defendant claims that the wage discrimination claim must fail due to the fact that Plaintiff cannot demonstrate that she earned less than any male counterpart. As a matter of law, Plaintiff earning more than her male counterpart must cause her claim to fail. *Brown v. Clarke Power Servs. Inc.*, No. 1:07-cv-1039 2009 WL 1394839 (S.D.Ohio May 18,

3

2009). Additionally, when calculating Plaintiff's earnings, it is appropriate to include:

> all payments made to [or on behalf of] an employee as remuneration for employment [including] all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name. Fringe benefits are deemed to be remuneration for employment.

29 C.F.R. § 1620.10. Defendant claims that, once all appropriate monetary amounts are considered, Plaintiff earned more than her male counterparts and therefore her claims must fail as a matter of law.

In 2009, Plaintiff earned a salary of approximately $67,500 ($52,500 base salary and $15,000 bonus).[2] When Brett Weber was assigned to Plaintiff's office in February 2010, he made a base salary of $55,000 but was ineligible for a bonus. Because Plaintiff took medical leave starting around early May 2010 and voluntarily resigned in July 2010 rather than returning from medical leave, it is unclear what bonus, if any, Plaintiff would have received in 2010.

The issue, then, is whether Plaintiff earned more than Brett Weber as a matter of law, therefore invalidating her claim of wage discrimination. Whether a bonus received in a previous year can count in a year where a Plaintiff does not receive a bonus because she does not work a full year seems to be an issue that has yet to be addressed by a court. It is not clear to the Court that Plaintiff could have received a bonus in 2010.

In an abundance of caution, with no legal precedent to provide guidance either way, and some doubt as to the fact of whether Plaintiff would have been eligible for or received a bonus in

---

[2] Defendant claims that Plaintiff earned additional fringe benefits that should be considered in the calculation of salary. However, these benefits appear to be in dispute, and are largely irrelevant since the bonus alone allows Plaintiff to exceed her male counterpart's wages.

4

2010, the claim for wage discrimination must survive summary judgment.[3]

**II. Retaliation**

Plaintiff's third claim is one for retaliation. Defendant concedes that Plaintiff received a written reprimand after filing her wage discrimination claim. Plaintiff claims that she suffered additional retaliatory action. However, Defendant has submitted record evidence that the only retaliatory action was the written correction.[4] Plaintiff has responded with nothing more than a citation to her complaint. To survive summary judgment, a responding party must point to some specific record evidence supporting a claim. *Magnum Towing & Recovery v. City of Toledo*, 287 Fed. Appx. 442, 449 (6th Cir. 2008). "Conclusory assertions will not by themselves do the trick." *Id.* Because Plaintiff has submitted only conclusory assertions as to other forms of retaliation, such acts are properly disregarded.

An adverse employment action is one which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe R. Co. v. White*, 548 U.S. 53, 68 (2006). An adverse employment action is a "materially adverse change in the terms and conditions" of a plaintiff's employment. *White v. Burlington Northern & Santa*

---

[3]The amount of damages in this case, however, may be minute. Plaintiff went on a leave of absence April 26, 2010 and quit rather then returning from her leave of absence. The leave of absence followed by Plaintiff quitting marks the end of her claim. 12 Causes of Action 1st 191 § 44 ("The period during which the plaintiff can recover damages ends on the date the plaintiff's employment terminated."). Since Plaintiff earned more than Mr. Weber's salary in 2009, her claim will likely not extend back past January 1, 2010. The damages for four months of pay discrepancy, including optional liquidated damages, would be approximately $1670 (four-twelfths of $2,500, doubled for liquidated damages).

[4]*Deposition of Mabel Sebastian*, DN 13, Exhibit B, pg. 16 ("Q: In what form did you -- do you believe retaliation took by ATA? What did they do that you claim was retaliation? A: Writing a corrective on me.").

*Fe R. Co.*, 364 F.3d 789, 797 (6th Cir. 2004). A "mere inconvenience or an alteration of job responsibilities" or a "bruised ego" is not enough to constitute an adverse employment action. *Id.* (citing *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). Examples of adverse employment actions include termination, failure to promote, suspensions, and a material loss of benefits. *Smith v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004).

In the Sixth Circuit, written reprimands can "dissuade a reasonable worker from making a charge of discrimination *if* they significantly impact an employee's wages or professional advancement." *Lahar v. Oakland Cnty.*, 304 Fed. Appx. 354, 357 (6th Cir. 2008) (internal edits and quotations omitted). There is no evidence that the reprimand in question resulted in either. Rather, the evidence shows that the Plaintiff took an extended medical leave shortly after the reprimand and voluntarily resigned her position prior to returning from her leave. Accordingly, the written reprimand did not result in a materially adverse change in the terms of employment and would not have dissuaded a reasonable worker from making or supporting a charge of discrimination, and it is not an adverse employment action. *Accord Eckerman v. Tennesse Dept. of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) (finding a demotion to be an adverse employment action, but stating that "the other incidents of misconduct alleged," including a written reprimand, do not rise "to the level of a compensable constitutional tort. . ."); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (for a negative performance evaluation to be an adverse employment action, "the plaintiff must point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation."). Because Plaintiff can not show an adverse employment action taken by Defendant, the retaliation claim must fail.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is GRANTED in part and DENIED in part. Due to a lack of legal precedent either way, the claims of wage discrimination will be allowed to continue to a jury.